UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATIYA BELL and ABEL FLORES,<br><br>On behalf of themselves and all other similarly situated persons<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN INCOME LIFE INSURANCE COMPANY, GIGLIONE-ACKERMAN AGENCY, LLC, ERIC GIGLIONE, and DAVID ACKERMAN,<br><br>Defendants. | Case No. _____ |

**NOTICE OF REMOVAL AND REMOVAL OF ACTION TO FEDERAL COURT**

**TO:** THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

**ON NOTICE TO:**

Ryan P. McCarthy, Esquire
James E. Goodley, Esquire
**GOODLEY MCCARTHY LLC**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Attorneys for Plaintiffs, Atiya Bell and Abel Flores

Clerk, Law Division, Civil Part
**Superior Court of New Jersey**
**Middlesex County Courthouse**
56 Paterson Street
New Brunswick, NJ 08903

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act, or "CAFA"), 1441, 1446, and 1453, Defendant American Income Life Insurance Company ("AIL"), by and through its attorneys, hereby removes to this Court the action entitled

*Atiya Bell and Abel Flores v. American Income Life Insurance Company, Giglione-Ackerman Agency, LLC, Eric Giglione, and David Ackerman*, Case No. MID-L-004928-22 (the "Action"), which was originally filed in the Superior Court of New Jersey, Law Division, Middlesex County. As the requisite "short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), AIL states as follows:

## BACKGROUND

1. On September 30, 2022, Plaintiffs Atiya Bell and Abel Flores ("Plaintiffs"), for themselves and other persons who allegedly worked as registered sales agents in New Jersey or trained to become registered New Jersey sales agents in preparation for contracting with AIL, commenced this putative class action by filing their Class Action Complaint (the "Complaint") in the Superior Court of New Jersey, Law Division, Middlesex County. Service of process was effectuated on AIL on November 4, 2022. A true and correct copy of the Complaint is attached hereto as **Exhibit A**. True and correct copies of the Civil Action Summons and Track Assignment Notice, which were served on AIL together with the Complaint, are attached hereto as **Exhibits B** and **C**, respectively, and a true and correct copy of the Affidavit of Service is attached as **Exhibit D**.

2. Plaintiff Atiya Bell is a resident of Newark, New Jersey, who alleges that she worked for AIL and the other named Defendants as a registered insurance agent from March 2018 to March 2021. (Compl. ¶¶ 2, 22.)

3. Plaintiff Abel Flores resides in Jersey City, New Jersey and likewise alleges that he worked for Defendants as a registered insurance agent in New Jersey from February 2021 to April 2021, and then again from October 2021 to February 2022. (*Id.*, ¶¶ 3, 22.)

4. Plaintiffs claim that AIL is an Indiana corporation with headquarters in Waco, Texas, which "provides life, accident, and supplemental health insurance policies." (*Id.*, ¶¶ 4, 17.) According to Plaintiffs, Defendant Giglione-Ackerman Agency, LLC ("GAA") is a "New Jersey Limited Liability Company" headquartered in Edison, New Jersey, that serves as an "exclusive broker of AIL products in New Jersey as the State General Agent of AIL" and is co-

owned by Eric Giglione and David Ackerman. (*Id.*, ¶¶ 6-8, 10.) Plaintiffs allege that "more than 150 agents operat[e] out of four offices, including [GAA's] Edison, New Jersey headquarters." (*Id.*, ¶ 18.)

5. According to Plaintiffs, in order to sell life insurance policies and other insurance products offered by "Defendants," Plaintiffs must enter into an "Agent Agreement" with "Defendants" and become licensed to sell insurance in New Jersey. (*Id.*, ¶ 19.) Agent Agreements are allegedly signed by representatives of AIL and GAA. (*Id.*, ¶ 20.) Plaintiffs claim that "[i]n these agreements, Defendants misclassified Plaintiffs and those similarly situated as independent contractors while exercising control over Plaintiffs and those similarly situated consistent with an employment relationship." (*Id.*, ¶ 21.) Plaintiffs and "Class Members" were allegedly compensated "exclusively on a commission basis . . . and were typically paid their commissions on a weekly basis for the prior week's sales, if any," according to a commission schedule set by "Defendants." (*Id.*, ¶¶ 23-24.) Plaintiffs claim that although they and "Class Members" sometimes were provided an advance on commissions, "there were multiple weeks during the applicable Class Periods in which they did not receive the full state minimum wage, and similarly multiple weeks in which they did not receive an overtime premium . . . for all hours worked in excess of 40 hours." (*Id.*, ¶ 25.)

6. According to Plaintiffs, "[p]rior to the COVID-19 pandemic, Plaintiffs and other Class Members would travel in the field to make sales to customers." (*Id.*, ¶ 26.) But from "approximately March 9, 2020 through the present . . . , Plaintiffs and other Class Members worked exclusively remotely (usually from home) and did not travel to make sales." (*Id.*, ¶ 27.) Because of this, Plaintiffs contend that they fell outside of the outside sales exemption from minimum and overtime wage requirements under New Jersey law, and are thus entitled to minimum wages for all hours worked and overtime pay for hours worked in excess of 40 in each workweek. (*Id.*, ¶¶ 29-32.)

7. Plaintiffs allege that they "typically worked approximately 50-60 hours per week" as licensed insurance sales agents and that "Class Members" likewise worked substantial overtime. (*Id.*, ¶ 28.)

8. Prior to becoming insurance sales agents, Plaintiffs claim that "Plaintiffs and Class Members were required to (and did) attend a two-week training program run by Defendants" (the alleged "Training Period"), during which they worked approximately 40-50 hours per week. (*Id.*, ¶¶ 33-34.) According to Plaintiffs, during this Training Period, Plaintiffs and Training Class Members were paid no wages at all; did not travel to customers or make sales; were not exempt from the obligation to pay overtime and minimum wages; and were unlicensed and not permitted to sell insurance in New Jersey. (*Id.*, ¶¶ 35-38.)

9. Plaintiffs seek to represent two putative classes consisting of:

   a. "All employees of AIL or GAA, excluding of [*sic*] the State General Agent and the Regional General Agent, who worked as registered agents in New Jersey, (including but not limited to producers/agents, supervising agents, general agents, master general agent) and who worked during at least one workweek in the remote-work period from between approximately March 9, 2020, through present (the 'COVID Remote-Work Class')" (*id.*, ¶ 13); and

   b. "All employees of AIL or GAA, excluding of [*sic*] the State General Agent and the Regional General Agent, who worked as registered agents in New Jersey, who worked as registered agents in New Jersey [*sic*], (including but not limited to producers/agents, supervising agents, general agents, master general agent), and who worked during at least one workweek as trainees within the last six years and who were not paid at least the New Jersey minimum wage or overtime premium pay during those workweeks ('Training Class')" (*id.*, ¶ 14).

10.     Plaintiffs allege that Defendants "have employed in excess of 50 COVID Class Members and in excess of 50 Training Class Members in New Jersey during the applicable Class Periods." (*Id*., ¶ 40.)

11.     In connection with the foregoing allegations, Plaintiffs assert on behalf of both the putative Training Class and COVID Remote-Work Class claims for: (i) failure to pay minimum and overtime wages in violation of the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. §§34.11-56a4(a) (*id*., ¶¶ 47-54); and (ii) failure to pay minimum and overtime wages in violation of the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1(c) (*id*., ¶¶ 55-59). Plaintiffs seek to recover "all unpaid minimum and overtime wages, plus liquidated damages in the amount of 200% of all unpaid or underpaid wages, pre-judgment and post-judgment interest at the highest rate allowable by law, and reasonable attorneys' fees (with appropriate fee enhancements)." (*Id*., at 11).

## BASIS FOR REMOVAL

12.     The Complaint is removable because this Court has original jurisdiction over this action under CAFA, 28 U.S.C. § 1332(d). CAFA creates federal jurisdiction over putative class actions in which: (a) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs; (b) any plaintiff is a citizen of a State different from any defendant; and (c) the putative class consists of more than 100 members. 28 U.S.C. §§ 1332(d)(2)(A), (d)(5). This Action meets each of these requirements.

### The Amount in Controversy Exceeds $5,000,000

13.     AIL vigorously disputes many of Plaintiffs' allegations, including any claims that AIL has any liability for wrongdoing, any class allegations, any suggestion that independent registered agents were "employees," and any conjecture about whether a class can be properly certified. AIL reserves all rights in this regard. Nonetheless, reviewing the allegations in the Complaint for the limited purpose of determining federal jurisdiction, the value of the relief sought makes this action subject to removal under CAFA.

14. To remove under CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by §1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). To determine the amount in controversy, a court must aggregate "the claims of individual class members." 28 U.S.C. § 1332(d)(6). In other words, CAFA instructs "the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

15. In determining the amount in controversy for jurisdictional purposes, as a starting point, the Court must look to the face of the complaint. *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007). But where, as here, the Complaint does not plead a specific amount of damages, a defendant's notice of removal "serves the same function as the complaint would if filed in the district court[,]" and the Court may consider facts alleged in the removal notice to ascertain the amount in controversy. *Frederico*, 507 F.3d at 197; *see also La Stella v. Aquion, Inc.*, No. 19-CV-10082(FLW), 2020 WL 7694009, at *4 (D.N.J. Dec. 28, 2020). In calculating the potential amount in controversy, courts include actual damages, compensatory damages, statutory penalties, punitive damages, and attorney's fees. *See Frederico*, 507 F.3d at 198; *Hargrove v. Sleepy's LLC*, No. 310CV01138PGSLHG, 2022 WL 617176, at *4 (D.N.J. Mar. 2, 2022) ("[I]n determining the amount in controversy, one looks at several factors. Those factors include 'both actual and punitive damages.'"); *Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 541 (D.N.J. 2020) (holding that an award of attorneys' fees also must be included as part of that determination where such an award is provided for by statute); *Faltaous v. Johnson & Johnson*, No. CIV.A. 07-1572JLL, 2007 WL 3256833, at *11 (D.N.J. Nov. 5, 2007) (including statutory penalties in amount-in-controversy calculation).

16. Here, Plaintiffs' broad claims, requests for relief, and putative class definitions more than suffice to meet the jurisdictional minimums for removal. As set forth above, Plaintiffs seek to recover (a) unpaid or underpaid minimum wages, (b) unpaid overtime, (c) liquidated damages equal to 200% of unpaid or underpaid wages, and (d) reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 34:11-56a25. (Compl. ¶¶ 54, 59.) Plaintiffs allege that there are currently "more than 150" insurance agents associated with GAA who are selling AIL insurance policies in New Jersey (*id.* ¶ 18), and that Defendants "employed" in excess of "50" COVID Class Members during between March 9, 2020 and the present, which spans roughly 142 weeks, and "employed" at least "50" Training Class Members.

17. The minimum wage in New Jersey was $11 for the entirety of calendar year 2020, $12 during calendar year 2021, and has been $13 since January 1, 2022. N.J. Stat. Ann. § 34:11-56a3; N.J. Admin. Code § 12:56-3.1. Where no exemption applies, employees who work more than 40 hours in any workweek are entitled to wages at a rate of not less than 1 1/2 times such employee's regular hourly wage. N.J. Admin. Code § 12:56-6.1.

18. **Minimum Wage and Overtime Damages**. The following are conservative assumptions based on Plaintiffs' allegations in the Complaint: (i) that there are at least 50 class members during the Putative Class Period (*see* Compl. ¶ 40); (ii) that there are 142 weeks in the Putative Class Period (*see id.* ¶ 13); (iii) an average minimum wage of $12.00 per hour (*i.e.*, the 2021 minimum wage); (iv) all class members completed training in at least 1 week and worked 45 hours during that week (*see id.* ¶¶ 33-34); and (v) after completing training, COVID class members worked an average of 55 hours per week as licensed sales agents (*see id.* ¶ 28). Applying those conservative assumptions, the amount-in-controversy associated with Plaintiffs' minimum and overtime wage claims is calculated as follows:

    a. **Minimum Wage, COVID Remote Work Class**: 50 class members x $12.00/hour x 55 hours/week x 142 weeks = **$4,686,000.**

    b. **Minimum Wage, Training Class**: 50 class members x $12.00/hour x 45 hours/week x 1 week = **$27,000**

    c.    **Overtime Premium Wages, COVID Remote Work Class**: .50 (overtime premium) x 50 class members x $12.00/hour x 15 overtime hours/week x 142 weeks = **$639,000**

    d.    **Overtime Premium Wages, Training Class**: .50 (overtime premium) x 50 class members x $12.00/hour x 5 overtime hours/week = **$1,500**

Accordingly, the total amount in controversy with respect to Plaintiffs' request for unpaid minimum and overtime wages is **$5,353,500**.

    19.    **Liquidated Damages**. Plaintiffs seek liquidated damages equal to 200 percent of the wages allegedly due. (Compl. ¶¶ 54, 59); N.J. Stat. Ann 34:11-4.10. Courts routinely factor liquidated damages into CAFA amount-in-controversy calculations in unpaid minimum and overtime wage claims under the NJWHL and NJWPL. *See Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 542 (D.N.J. 2020); *Faltaous*, 2007 WL 3256833, at *11. Based on the forgoing minimum and overtime wage calculations, the amount in controversy with respect to Plaintiffs' liquidated damages claim is $5,353,000 (total alleged overtime/minimum wages) x 2 = **$10,707,000**.

    20.    **Attorneys' Fees**. "In the context of a claim asserted under the [NJWHL], courts may include a thirty percent attorneys' fee award." *Alegre v. Atl. Cent. Logistics*, No. CIV.A. 15-2342 SRC, 2015 WL 4607196, at *6 (D.N.J. July 31, 2015); *see also Mazzucco v. Kraft Foods Global, Inc.*, No. 11–2430(CLW), 2011 WL 6935320, at *3 (D.N.J. Nov.23, 2011), report and recommendation adopted in full, No. 11–2430(ES), 2011 WL 6936353 (D.N.J. Dec. 30, 2011) ("N.J.S.A. 34:11–56a allows for the recovery of reasonable attorney's fees . . . . The median in the Third Circuit is roughly thirty percent (30%) of a common fund . . . . For the purpose of the amount in controversy analysis, this Court will apply a thirty percent (30%) rate."). Assuming Plaintiffs were to recover the foregoing alleged unpaid minimum, overtime, and liquidated damages, the amount-in-controversy with respect to Plaintiffs' request for reasonable attorneys' fees is (**$5,353,000 + $10,707,000) x .30 = $4,818,150.**

21. Based on the foregoing, the total amount-in-controversy with respect to Plaintiffs' claims under CAFA, exclusive of interest and costs, would be at least **$20,878,650**, as summarized in the table below.  This amount is well in excess of the $5,000,000 statutory minimum.

| Category | Amount |
| --- | --- |
| Unpaid Minimum Wages, COVID Remote-Work Class | $4,686,000 |
| Unpaid Minimum Wages, Training Class | $27,000 |
| Unpaid Overtime, COVID Remote-Work Class | $639,000 |
| Unpaid Overtime, Training Class | $1,500 |
| Liquidated Damages (2x minimum and OT damages) | $10,707,000 |
| Attorneys' Fees | $4,818,150 |
| Total | $20,878,650 |

### There Is Minimal Diversity Between Plaintiffs and Defendants

22. CAFA requires only minimal diversity, and in putative class actions, "[t]he district courts shall have original jurisdiction of any civil action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).  Here, Plaintiffs are domiciled in New Jersey (Compl. ¶¶ 2-3), and Defendant AIL is headquartered in Texas and incorporated in the State of Indiana (*id.* ¶ 4).  Accordingly, Plaintiffs and AIL are citizens of different states and the minimal diversity requirement is satisfied.

### The Proposed Putative Class Exceeds 100 Members

23. Plaintiff alleges that there are more than 150 insurance agents currently affiliated with Defendants in New Jersey.  (Compl. ¶ 18.)  Accordingly, the requirement that the putative

class exceed 100 members is satisfied on the face of the Complaint. *See* 28 U.S.C. § 1332(d)(5)(B).

### No Exception to CAFA Jurisdiction Applies

24. Although not necessary for purposes of this Notice of Removal, the exceptions to CAFA removal set forth in 28 U.S.C. §§ 1332(d)(3) and (d)(4)(B) do not apply because AIL is a primary Defendant and is *not* a citizen of the state in which this action was filed (*i.e.*, New Jersey).

25. Although not necessary for purposes of this Notice of Removal, the local controversy exception to CAFA removal set forth in 28 U.S.C. §§ 1332(d)(4)(A) does not apply because, *inter alia*, multiple class actions asserting the same or similar factual allegations against AIL were filed in the three-year period preceding the filing of this action. *See Alegre v. Atl. Cent. Logistics*, No. CIV.A. 15-2342 SRC, 2015 WL 4607196, at *8 (D.N.J. July 31, 2015) (holding local controversy exception did not apply because wage-and-hour class action alleging independent contractor misclassification claims under FLSA and California law in the Central District of California involved similar factual allegations to those of New Jersey action seeking relief for independent contractor misclassification solely under New Jersey law). By way of example:

   a. Attached as **Exhibit E** is a true and correct copy of the Class and Collective Action Complaint captioned *Audra Patterson, et al. v. Am. Income Life Ins. Co., et al.*, Case No. 4:19-cv-00918, which was filed in the United States District Court for the Eastern District of Arkansas on December 19, 2019, and asserted against AIL wage and hour claims arising out of the alleged misclassification of insurance sales agents as independent contractors under the federal Fair Labor Standards Act ("FLSA") and state wage-and-hour law.

      b.      Attached as **Exhibit F** is a true and correct copy of the Class and Collective Action Complaint captioned *Deaven Berry, et al. v. Am. Income Life Ins. Co.*, Case No. 2:20-cv-00110, which was filed in the United States District Court for the Western District of Pennsylvania on February 27, 2020 and asserted against AIL wage and hour claims arising out of the alleged misclassification of insurance sales agents as independent contractors under the FLSA and state wage-and-hour law.

      c.      Attached as **Exhibit G** is a true and correct copy of the Class Action Complaint captioned *David Burkes, et al. v. Am. Income Life Ins. Co.*, Case No. 2:22-cv-01054, which was filed in the United States District Court for the Western District of Pennsylvania on July 22, 2022 and asserted against AIL wage and hour claims arising out of the alleged misclassification of insurance sales agents as independent contractors under the FLSA and state wage-and-hour law.

### THE PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED

26.    **Consent of Other Defendants**.  Defendants GAA, Eric Giglione, and David Ackerman have all consented to the removal of this action to federal court pursuant to 28 U.S.C. § 1446(b)(2)(A).  (**Ex. H**, Declaration of Jeffrey Hammer, ¶ 2.)

27.    **Timeliness of Removal**.  Pursuant to 28 U.S.C. § 1446(b), a party must file a notice of removal of a civil action or proceeding within 30 days after the receipt by the defendant of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.  The date upon which the 30-day period within which a party must remove an action begins to run is determined by the date upon which service of process is deemed effective under state law.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

      a.      Here, Plaintiffs served AIL on November 4, 2022.  Accordingly, this removal is timely.  A true a correct copy of the Affidavit of Service filed by Plaintiffs in the New Jersey Superior Court, Law Division, Middlesex County is attached hereto as **Exhibit D**.

      28.      **Notice to State Court and Adverse Party**.  As required by 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being promptly served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Superior Court of New Jersey, Law Division, Middlesex County.

      29.      **State Court Record**.  **Exhibits A** through **C** constitute true and correct copies of all process, pleadings, and orders served upon AIL in this Action and are attached to this Notice of Removal pursuant to 28 U.S.C. § 1446(a).

      30.      **Venue and Divisional Assignment**.  Pursuant to 28 U.S.C. § 1441(a), proper venue lies in the United States District Court for the District of New Jersey because Plaintiffs filed their Complaint in the Superior Court of New Jersey, Law Division, Middlesex County, which is located within the District of New Jersey.  Venue, therefore, is proper in this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a); *see also* 28 U.S.C. § 110(a) (providing that "New Jersey constitutes one judicial district").

## CONCLUSION

      31.      Based on the foregoing, this Action is within the original jurisdiction of this Court pursuant to 28 U.S.C. § 1332(d) and venue is proper pursuant to 28 U.S.C. § 1441(a).

      32.      By removing this Action to this Court, AIL does not waive any defenses, objections or motions available to it under applicable law.

**WHEREFORE**, AIL hereby removes this civil action to this Court from the Superior Court of New Jersey, Law Division, Middlesex County.

/s/*Jennifer N. Capozzola*
Jennifer N. Capozzola (N.J. Bar No. 024381997)
Post & Schell, P.C.
Four Penn Center
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
Tel: (215) 587-1151
Fax: (215) 587-1444
Email: jcapozzola@postschell.com

*Counsel for Defendant American Income Life Insurance Company*

## **CERTIFICATE OF SERVICE**

I, Jennifer N. Capozzola, Esquire, hereby certify that on this date the foregoing Notice of Removal and supporting papers have been electronically filed with the Court and are available for viewing and downloading from the CM/ECF System. I further certify that I caused a true and correct copy of same to be filed and served via electronic filing in the Superior Court of New Jersey eCourts system as follows:

Ryan P. McCarthy, Esquire
James E. Goodley, Esquire
**GOODLEY MCCARTHY LLC**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
*Attorneys for Plaintiffs, Atiya Bell and Abel Flores*

Clerk, Law Division, Civil Part
**Superior Court of New Jersey**
**Middlesex County Courthouse**
56 Paterson Street
New Brunswick, NJ 08903

Date: November 30, 2022              */s/ Jennifer N. Capozzola*
                                     JENNIFER N. CAPOZZOLA