NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATIYA BELL and ABEL FLORES,<br><br>On behalf of themselves and all other similarly situated persons<br><br>Plaintiffs,<br>v.<br><br>AMERICAN INCOME LIFE INSURANCE COMPANY, GIGLIONE-ACKERMAN AGENCY, LLC, ERIC GIGLIONE, and DAVID ACKERMAN,<br><br>Defendants. | Civil Action No.: 2:22-cv-06913<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

This matter comes before the Court on Defendant American Income Life Insurance Company's ("Defendant American") motion to compel arbitration and stay the case (ECF No. 15), and Defendants Giglione-Ackerman, LLC, Eric Giglione, and David Ackerman's (together, the "Giglione-Ackerman Defendants") motion to compel arbitration and stay the case (ECF Nos. 16-17). Plaintiffs Atiya Bell and Abel Flores (together, "Plaintiffs"), on behalf of themselves and similarly situated persons, filed an omnibus opposition to both motions. ECF No. 28. Defendant American filed a reply (ECF No. 29), as did the Giglione-Ackerman Defendants (ECF No. 30). The Court decides this motion without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motions to compel arbitration and stay the case are denied, and the parties are ordered to conduct limited discovery on the issue of arbitrability.

### I. BACKGROUND

This case arises out of Plaintiffs' class action lawsuit against Defendants, which is predicated on their assertion that Defendants "misclassified Plaintiffs and those similarly situated as independent contractors while exercising control . . . consistent with an employment relationship." ECF No. 1-1 ("Compl.") at ¶ 21. As a result, Plaintiffs seek appropriate overtime and minimum wages in accordance with the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.* ("NJWHL") and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 *et seq.* ("NJWPL"). *See generally* Compl. Following Defendants' removal to federal court, Defendants moved to compel arbitration in accordance with the sales agent agreements ("Agent Agreements") entered between Plaintiffs, Defendant American and the Giglione-Ackerman Defendants. ECF Nos. 15-17.

#### a. The Relevant Parties

Defendant American is a Texas-based insurance company "that produces life, accident, and supplemental health insurance policies." ECF No. 15-4 at 1; Compl. at ¶ 17. Defendant American contracts with licensed independent sales agents who sell the company's insurance products in many states across the country, including New Jersey. ECF No. 15-4 at 1, 5. Plaintiffs are two such sales agents registered to sell insurance in New Jersey. ECF No. 28 at 4. Plaintiff Bell operated as a sales agent for Defendant American from approximately March 2018 to March 2021. *Id.*; Compl. at ¶ 22. Plaintiff Flores operated as a sales agent for Defendant American from approximately January to April 2021 and from October 2021 to February 2022. ECF No. 28 at 4; Compl. at ¶ 22. Defendant Giglione-Ackerman, LLC, owned by Defendants Giglione and Ackerman, is Defendant American's State General Agent that was also party to Plaintiffs' Agent Agreements. ECF No. 15-4 at 3 n.1; Compl. at ¶ 18.

b. **Plaintiffs' Union Membership & The Collective Bargaining Agreement**

Related to their engagement with Defendants, Plaintiffs were members of Local 277 of the Office & Professional Employees International Union, AFL-CIO ("OPEIU" or the "Union").[1] ECF No. 28 at 1. Defendant asserts that agents electing to join the Union "do so as non-employee Union members." ECF No. 29 at 3. Defendants and the Union were parties to a Collective Bargaining Agreement (the "CBA"), which stated that "[n]othing contained herein shall be construed to create the relationship of employer and employee between the Company and the agent." ECF No. 28-1, Ex. C at p. 2.

For purposes of this dispute, there are two relevant provisions of the CBA. The first is Article 18, Section 1, which states that "[a]gents shall have a written agreement" with Defendants and "[t]he agreement shall become part of this [Collective Bargaining] Agreement and a copy shall be sent to the Union." ECF No. 28-1, Ex. C at Art. 18, § 1. Defendants take the position that the written agreement referenced in the CBA are Plaintiffs' individual Agent Agreements, ECF No. 29 at 4, which Plaintiffs seemingly do not dispute, ECF No. 28 at 6 (Plaintiffs stating that "the CBA appears to provide Defendants permission to enter into individual contracts with employees regarding specific issues").

And second, regardless of an agent's status as independent contractor or employee, the CBA contains a multi-step grievance procedure. *See* ECF No. 28-1, Ex. C at Art. 14. Eligible grievances "must be filed within 30 days after a violation" or "within 10 days of discovery." ECF No. 28-1, Ex. C at Art. 14, § 1. The CBA states that "disputes eligible for grievance shall be handled exclusively in accordance with this procedure." ECF No. 28-1, Ex. C at Art. 14, §

---

[1] The parties seemingly dispute whether "Defendants required Plaintiffs to become [Union] members." *Compare* ECF No. 28 at 1, *with* ECF No. 29 at 3 (Defendant American noting that "[i]ndependent sales agents have the option of joining OPEIU").

5. The grievance procedure "cover[s] matters that arise over a violation of [an agent's] contract and this [Collective Bargaining] Agreement." ECF No. 28-1, Ex. C at Art. 14, § 6. The CBA's grievance procedure unfolds in three steps: (1) a grievance may be submitted to the Union and violating party and, absent settlement, "the Union may, if in its best judgment the grievance has merit, proceed to Step 2"; (2) the Union may certify the grievance to Step 3 and notify the relevant parties of same; and (3) "[g]rievances certified will be submitted to arbitration." ECF No. 28-1, Ex. C at Art. 14, § 1. "Any award made pursuant to voluntary arbitration proceedings will be final and binding on both parties." ECF No. 28-1, Ex. C at Art. 14, § 6. Ultimately, "[n]o person shall initiate any procedure with any court or government agency until remedies under [the CBA] have been exhausted." ECF No. 28-1, Ex. C at Art. 14, § 5.

### c. Plaintiffs' Agent Agreements With Defendants

In addition to their Union membership and rights under the CBA, Plaintiffs also executed individual Agent Agreements with Defendants. Compl. at ¶ 19; *see also* ECF No. 28-1, Ex. A; ECF No. 28-2, Ex. A. Both agreements contained an arbitration clause. ECF No. 28-1, Ex. A at 4; ECF No. 28-2, Ex. A at 4. The arbitration provision states, in relevant part:

> In the event of any dispute or disagreement, whether arising out of or relating to this Contract or otherwise, that is not subject to or resolved by the grievance process set forth in the operative union agreement between the Company's State General Agents, the Company, and OPEIU 277, the Parties to the dispute shall use their best efforts to settle such disputes . . .
>
> If the Parties do not reach a just solution by negotiation as described above, then upon written notice by one Party to another, all disputes, claims, questions and controversies of any kind or nature arising out of or relating to this Contract, any alleged violation of any state or federal statute, regulation, law or order of any kind, and/or the agent's relationship as an independent contractor and not an employee (including, without limitation, claims for wrongful termination, discrimination, wage-and-hour violations, or any other claim based on the alleged employment relationship), regardless of whether they are brought by or against the Company, the Agent, or the State General Agent, except a dispute relating to the enforceability of this agreement to arbitrate, shall be submitted to binding arbitration under the substantive rules of the Federal Arbitration

4

Act ("FAA"), to be administered by the American Arbitration Association ("AAA") . . . ECF No. 28-1, Ex. A at 4; ECF No. 28-2, Ex. A at 4.  The arbitration provision further states that "[a]rbitration shall be on an individual, not a class, collective, representative, or private attorney general basis."  ECF No. 28-1, Ex. A at 4; ECF No. 28-2, Ex. A at 4.

The Agent Agreements also contain an acknowledgment at the end stating, "I hereby acknowledge that I have read the foregoing contract in its entirety, including the arbitration provision . . . ."  ECF No. 28-1, Ex. A at 5; ECF No. 28-2, Ex. A at 5 (text lowercased).

### d. Procedural History and The Parties' Positions

Plaintiffs filed their class action complaint in the Superior Court of New Jersey, Law Division, Middlesex County on September 30, 2022.  ECF No. 1-1.  On November 30, 2022, Defendant American, with the consent of the Giglione-Ackerman Defendants, removed the action to this Court under the Class Action Fairness Act, 28 U.S.C. 1332(d).  ECF No. 1 at 1.  Soon thereafter, on December 21, 2022, Defendant American filed the instant motion to compel arbitration and stay the case.  ECF No. 15.  On the same day, the Giglione-Ackerman Defendants also filed a motion to compel arbitration and stay the case, ECF Nos. 16-17, primarily adopting in full Defendant American's arguments.

In the instant motions, Defendants argue that Plaintiffs' claims, which are predicated on wage-and-hour disputes and their status as independent contractors, fall squarely within the Agent Agreements' arbitration clause.  ECF No. 15-4 at 1.  As such, Defendants contend that Plaintiffs have contractually consented to and are compelled to arbitrate these claims on an individual basis.  *Id.* at 6.  In opposition, Plaintiffs assert that they are not required to arbitrate their claims because the arbitration clause in the Agent Agreements is unenforceable.  ECF No. 28 at 1.  Specifically, Plaintiffs contend that, because they were Union members, Defendants are

5

bound to the exclusive grievance procedures outlined in the CBA and the Agent Agreements' arbitration clause conflicts with those procedures. *Id.* at 7-12. Additionally, Plaintiffs argue that, because they are employees and thus subject to National Labor Relations Act ("NLRA") protections, Defendants had an obligation to exclusively negotiate with the Union over the terms of Plaintiffs' employment. *Id.* at 7-8. And finally, Plaintiffs contend that the arbitration clause is otherwise invalid under New Jersey law, which they argue should apply here.[2] *Id.* at 13-19.

Defendants respond by arguing that Plaintiffs' Union membership does not excuse their obligations to arbitrate under the Agent Agreements. ECF No. 29 at 2. First, they assert that, because the CBA incorporates the Agent Agreements by reference, both agreements must be read together such that any dispute not successfully resolved through the CBA's grievance procedure must then be submitted to binding arbitration per the Agent Agreements. *Id.* at 3-5. Second, Defendants contend that, because Plaintiffs are independent contractors and not employees, the NLRA does not bar Defendants' right to individually contract with Plaintiffs. *Id.* at 5-6. Finally, to the extent the Court finds ambiguity in the record, the parties dispute whether discovery on the issue of arbitrability is necessary. ECF No. 28 at 19-20; ECF No. 29 at 15.

II.   **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") reflects the strong federal policy in favor of arbitration and "'places arbitration agreements on equal footing with all other contracts.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Pursuant to the FAA, courts "compel arbitration

---

[2] The parties dispute which jurisdiction's laws govern enforceability of the arbitration clause. ECF No. 28 at 13 (Plaintiffs arguing New Jersey law applies); ECF No. 29 at 9 (Defendants arguing Texas law applies, but that the arbitration clause is valid under Texas and New Jersey law). Because the Court dismisses Defendants' motions on other grounds, the Court need not address the choice-of-law or underlying validity arguments here.

6

of claims covered by a written, enforceable arbitration agreement." *Bacon*, 959 F.3d at 599 (citing 9 U.S.C. §§ 3, 4). Yet despite the strong presumption of arbitrability, "[a]rbitration is strictly a matter of contract" and thus is governed by state law. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."). Accordingly, when deciding whether to compel arbitration under the FAA, the Court must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (internal citation omitted). In conducting this inquiry, the Court applies state law principles of contract formation. *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-cv-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018).

### III.    DISCUSSION

In determining whether a valid arbitration agreement exists between the parties, the Court must first decide whether to apply the Rule 12(b)(6) or Rule 56 standard of review. *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Court will review a motion to compel arbitration under the Rule 12(b)(6) standard "when it is apparent, based on the 'face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause.'" *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (internal citations omitted); *see also MZM Construction Co., Inc. v. N.J. Building Laborers Statewide Benefits Fund*, 974 F.3d 386, 406 (3d Cir. 2020).

Conversely, the Rule 56 standard will apply "when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable

evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774 (internal citations omitted); *see also Noonan v. Comcast Corp.*, No. 16-cv-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017) ("[T]hus, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record."). Accordingly, "the non-movant must be given a limited opportunity to conduct discovery on the narrow issue of whether an arbitration agreement exists." *Ross v. CACH, LLC*, No. 14-cv-6321, 2015 WL 1499282, at *2 (D.N.J. Apr. 1, 2015); *see also Guidotti*, 716 F.3d at 774-76 ("Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record . . . . Under either of those scenarios, a 'restricted inquiry into factual issues' will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate."). "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under [the Rule 56] summary judgment standard." *Guidotti*, 716 F.3d at 776.

Here, the Court acknowledges that Plaintiffs implicate the Agent Agreements, which contain the arbitration provision, in their complaint. Compl. at ¶¶ 19-21. However, the Agent Agreements are only mentioned in reference to Plaintiffs challenge of their status as independent contractors. Compl. at ¶ 21; *see also Ackies v. Scopely, Inc.*, No. 19-cv-19247, 2020 WL 5757988, at *4 (D.N.J. Sept. 28, 2020) (denying motion to compel arbitration where the document containing the arbitration clause was mentioned in the complaint but "substantively cited for the first time in Defendant's motion"). More importantly, the complaint does not reference, attach or cite to the CBA entered between Defendants and the Union, nor does it

8

mention Plaintiffs' Union membership. From the briefing, the parties evidentially agree that Plaintiffs' obligation to arbitrate can only be understood by looking to both the CBA and the Agent Agreements. ECF No. 28 at 6 (Plaintiffs arguing invalidity of the arbitration clause through the CBA's terms); ECF No. 29 at 4-5 (Defendants arguing that the CBA and Agent Agreements must be read together). Whether the CBA's terms invalidate or supplement the Agent Agreements' arbitration clause is a question that cannot be resolved without considering additional evidence extraneous to the pleadings, and thus it would be inappropriate to apply the Rule 12(b)(6) standard in deciding this motion. *See Guidotti*, 716 F.3d at 774. Accordingly, further development of the factual record is necessary to evaluate the arbitrability of this dispute.

As courts in this Circuit have explained, a "motion to compel arbitration must be denied pending further development of the factual record" where, like here, the pleadings do not adequately explain the full relationship between the parties. *Id.* at 774; *see also Hubbard v. Comcast Corp.*, No. 18-cv-16090, 2019 WL 2866067, at *1 (D.N.J. July 3, 2019) (denying motion to compel arbitration where the complaint made no reference to documents allegedly incorporating the company's dispute resolution program); *Stacy v. Tata Consultancy Servs., Ltd.*, No. 18-cv-13243, 2019 WL 1233081, at *3 (D.N.J. Mar. 14, 2019) (stating that a complaint and its supporting documents are not dispositive where "a plaintiff responds to a motion to compel with additional facts sufficient to place the issue of arbitrability 'in issue,' [and] the parties should be entitled to discovery").

Therefore, the Court will deny Defendants' motions without prejudice and order the parties to conduct limited discovery on the issue of arbitrability. Thereafter, Defendants may file renewed motions to compel arbitration, which the Court will review under the Rule 56 standard. Defendants may raise any additional arguments, if applicable, in their renewed motions.

## IV. CONCLUSION

For the reasons set forth above, Defendants motions to compel arbitration and stay the case (ECF Nos. 15-17) are denied without prejudice pending further factual development of the record.

Accordingly, **IT IS** on this 17th day of July, 2023,

**ORDERED** that Defendant American's motion to compel arbitration and stay the case (ECF No. 15) is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Giglione-Ackerman Defendants' motion to compel arbitration and stay the case (ECF Nos. 16-17) is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the parties shall conduct limited discovery on the issue of arbitrability.

**SO ORDERED**.

s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**